ANNETTE KINGSLAND ZIEGLER, J.
¶ 117. (concurring). I concur in the lead opinion's conclusion to affirm; I do not join the lead opinion's entire analysis.[1] Although I agree with much of the lead opinion's analysis in this case, I write separately because I fear our jurisprudence on retroactive legislation is in the process of becoming unmoored from fundamental principles of constitutional law and statutory interpretation. For example, while the lead opinion cites specific factors pertinent to the instant case, it fails to anchor those factors to the overriding applicable principles. Therefore, I write to reemphasize the relevant framework when the court analyzes a claim that legislation is retroactive and cannot be applied in a particular case.
¶ 118. I also write because in retroactive legislation cases, Wisconsin jurisprudence has sometimes muddied the waters, using the concept of rational basis review interchangeably with the concept of a "balancing test."[2] As will be explained, these two concepts *542 could be applied consistently with each other, as long as the balancing test is understood to be a tool to determine whether a statute is rationally related to a legitimate government purpose.[3]
¶ 119. Wisconsin Stat. § 807.01(4) (2009-10) entitles a party who recovers a judgment greater than or equal to the amount specified in the party's earlier, rejected offer of settlement to obtain interest at an annual rate of 12 percent on the amount recovered from the date of the offer of settlement until the amount is paid. Wis. Stat. § 807.01(4) (2009-10). In 2011 the legislature amended Wis. Stat. § 807.01(4) (2009-10), reducing the applicable interest rate to " 1 percent plus the prime rate ... as reported by the federal reserve board in federal reserve statistical release H. 15." See 2011 Wis. Act 69; Wis. Stat. § 807.01(4) (2013-14).[4]
*543 ¶ 120. Lands' End, Inc. ("Lands' End") has been embroiled in litigation with the City of Dodgeville ("the City") for several years. Lands' End tendered an offer of settlement to the City prior to the amendments to Wis. Stat. § 807.01(4), but recovered or will recover a judgment greater than the amount specified in that settlement offer after the amendment to § 807.01(4) (2009-10) has taken effect.
¶ 121. Lands'End insists that it is entitled to the 12 percent interest rate in the pre-2011 version of § 807.01(4), and supports its claim with four arguments.
¶ 122. First, Lands' End relies on a canon of statutory construction known as the "presumption against retroactivity" to argue that this court should simply interpret Wis. Stat. § 807.01(4) (2013-14) so that the new interest rate does not apply to Lands' End. See generally Antonin Scalia & Bryan A. Garner, Reading Law 261-65 (2012). Next, Lands' End argues that constitutional guarantees prohibit the Wisconsin State Legislature from reducing the interest rate in Wis. Stat. § 807.01(4) (2009-10) and applying that new rate to parties, such as Lands' End, who had made offers of settlement prior to the amendments to that statute. Specifically, Lands' End contends that, because it possesses a "vested" right to the earlier 12 percent interest rate, application to Lands' End of the amendments to § 807.01(4) violates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, which bars states from depriving *544 persons of life, liberty, or property "without adequate procedures," Arneson v. Jezwinski, 225 Wis. 2d 371, 400, 592 N.W.2d 606 (1999) (citation omitted), and which separately "provides protection from 'certain arbitrary, wrongful government actions,'" State ex rel. Greer v. Wiedenhoeft, 2014 WI 19, ¶ 57, 353 Wis. 2d 307, 845 N.W.2d 373 (citation omitted). See U.S. Const. amend XIV, § 1.[5] Lands' End also argues that application to it of the amendments to Wis. Stat. § 807.01(4) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, which "is designed to assure that those who are similarly situated will be treated similarly." State v. Smith, 2010 WI 16, ¶ 15, 323 Wis. 2d 377, 780 N.W.2d 90 (citation omitted). See U.S. Const. amend XIV, § 1.[6]
¶ 123. Finally, Lands' End claims that application to it of the amendments to § 807.01(4) violates Wis. Stat. § 990.04 (2013-14), which provides in part that the repeal of a statute does not remit, defeat, or *545 impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred, or rights of action accrued prior to the repeal of the repealed statute, unless the legislature expressly states otherwise. See Wis. Stat. § 990.04 (2013-14).
¶ 124. Each of Lands' End's arguments fail. First, the canon of construction — the presumption against retroactivity — does not apply because under these facts Lands' End has failed to demonstrate that Wis. Stat. § 807.01(4) (2013-14) has retroactive effect. Lands' End's due process claim is based upon the statute having retroactive effect. Because under these facts it does not, Lands' End's due process claim does not warrant discussion.
¶ 125. Second, Lands' End's right to equal protection under the law is not violated by Wis. Stat. § 807.01(4) (2013-14). Lands' End does not argue, nor does this record support the argument, that this case involves fundamental rights or suspect classes. There is a "reasonable basis" for differentiating between parties which had and which had not obtained judgments prior to enactment of Wis. Stat. § 807.01(4) (2013-14). See Smith, 323 Wis. 2d 377, ¶ 15.
¶ 126. Finally, the amendments to Wis. Stat. § 807.01(4) do not "remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under" Wis. Stat. § 807.01(4) (2009-10), so Wis. Stat. § 990.04 (2013-14) does not apply. Consequently, I would affirm the decision of the circuit court.
I. THE POLICE POWER OF THE STATES AND THE PRESUMPTION OF CONSTITUTIONALITY
¶ 127. In part, this case focuses on a putative limit on our state legislature: Lands' End argues that, *546 after it made an offer of settlement to the City under Wis. Stat. § 807.01(4) (2009-10), the legislature was powerless to change the interest rate applicable to the amount Lands' End might ultimately recover from the City. In order to understand more fully any applicable limits on state legislative power, it is appropriate first to review the nature of the power to which such limitations would apply.
[P]revious to the formation of the new constitution, we were divided into independent states, united for some purposes, but in most respects, sovereign. These states could exercise almost every legislative power.... When the American people created a national legislature, with certain enumerated powers, it was neither necessary nor proper to define the powers retained by the states. These powers proceed, not from the people of America, but from the people of the several states; and remain, after the adoption of the constitution, what they were before, except so far as they may be abridged by that instrument.
Sturges v. Crowninshield, 17 U.S. (4 Wheat.) 122, 192-93 (1819) (per Marshall, C.J.).
¶ 128. Thus, "[i]n our federal system, the National Government possesses only limited powers; the States and the people retain the remainder. The States have broad authority to enact legislation for the public good — what we have often called a 'police power.'" Bond v. United States, 572 U.S. _, 134 S. Ct. 2077, 2086 (2014) (citation omitted). This authority is indeed broad: "it is much easier to perceive and realize the existence and sources of it than to mark its boundaries, or prescribe limits to its exercise." Slaughter-House Cases, 83 U.S. (16 Wall.) 36, 62 (1872) (citation omitted); see also Queenside Hills Realty Co. v. Saxl, 328 U.S. 80, 83 (1946) (police power is "one of the least *547 ¡imitable of governmental powers" (citations omitted).). This is so because the "police power" is simply "the powers of government inherent in every sovereignty to the extent of its dominions." Nebbia v. New York, 291 U.S. 502, 524 (1934) (citation omitted).
¶ 129. Partial definitions have, however, been attempted. "[T]he police power of a state embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals, or the public safety." Chicago, B. & Q. Ry. Co. v. Illinois, 200 U.S. 561, 592 (1906) (citations omitted); see also Slaughter-House Cases, 83 U.S. at 62 (police power "extends ... to the protection of the lives, limbs, health, comfort, and quiet of all persons, and the protection of all property within the State" (citation omitted).).
¶ 130. All of this is not to say that the police power is unlimited; it is of course subject to constitutional restrictions. See, e.g., Lambert v. California, 355 U.S. 225, 228 (1957); Panhandle E. Pipe Line Co. v. State Highway Comm'n of Kansas, 294 U.S. 613, 619 (1935); Nebbia, 291 U.S. at 524-25. But this court must always be hesitant to exercise its own power to declare that the legislature has exceeded its authority.
[The legislature] is supreme in all cases where it is not restrained by the constitution; and as it is the duty of legislators as well as judges to consult this and conform their acts to it, so it should be presumed that all their acts do conform to it unless the contrary is manifest. This confidence is necessary to insure due obedience to its authority. If this be frequently questioned, it must tend to diminish the reverence for the laws which is essential to the public safety and happiness. . . . The interference of the judiciary with leg *548 islative Acts, if frequent or on dubious grounds, might occasion so great a jealousy of this power and so general a prejudice against it as to lead to measures ending in the total overthrow of the independence of the judges, and so of the best preservative of the constitution. The validity of the law ought not then to be' questioned unless it is so obviously repugnant to the constitution that when pointed out by the judges, all men of sense and reflection in the community may perceive the repugnancy. By such a cautious exercise of this judicial check, no jealousy of it will be excited, the public confidence in it will be promoted, and its salutary effects be justly and fully appreciated.
James B. Thayer, The Origin and Scope of the American Doctrine of Constitutional Law, 7 Harv. L. Rev. 129, 142 (1893) (quoting Byrne's Adm'rs v. Stewart's Adm'rs, 3 S.C. Eq. 466, 476-77 (3 Des. 466) (S.C. App. Eq. 1812)). Fittingly, then, this court "has often affirmed the well-established presumption of constitutionality that attaches itself to all legislative acts." State ex rel. Hammermill Paper Co. v. La Plante, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973). In fact, we require litigants challenging the constitutionality of a statute to establish the statute's unconstitutionality "beyond a reasonable doubt." Madison Teachers, Inc. v. Walker, 2014 WI 99, ¶ 76, 358 Wis. 2d 1, 851 N.W.2d 337. We must view with skepticism any claim that the legislature has violated the federal or state constitutions.
II. RETROACTIVE LEGISLATION AND THE PRESUMPTION AGAINST RETROACTIVITY
¶ 131. This case requires the court to determine whether Wis. Stat. § 807.01(4) (2013-14) is retroactive in effect. Generally speaking, a retroactive law is "a legislative act that looks backward or contemplates the *549 past, affecting acts or facts that existed before the act came into effect." Retroactive law, Black's Law Dictionary 1511 (10th ed. 2014). On the other hand, " [a] statute does not operate 'retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment or upsets expectations based in prior law." Landgraf v. USI Film Products, 511 U.S. 244, 269 (1994) (citation omitted).[7] Additionally," a statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.' " Id. at 269 n.24 (citation omitted).
¶ 132. Determining whether a statute has retroactive effect "demands a commonsense, functional judgment about 'whether the new provision attaches new legal consequences to events completed before its enactment.' " Martin v. Hadix, 527 U.S. 343, 357-58 (1999) (citation omitted).
The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, retroactivity is a matter on which judges tend to have "sound . . . instinct[s]," see Danforth v. Groton Water Co., 178 Mass. 472, 476, 59 N.E. 1033, 1034 (1901) (Holmes, J.), and familiar consider *550 ations of fair notice, reasonable reliance, and settled expectations offer sound guidance.
Landgraf, 511 U.S. at 269.
¶ 133. State statutes are not unconstitutional simply because they apply retroactively. League v. Texas, 184 U.S. 156, 161 (1902). "That there exists a general power in the state governments to enact retrospective or retroactive laws, is a point too well settled to admit of question at this day." Id. (internal quotation marks omitted) (citation omitted). "Absent a violation of one of [the Constitution's] specific provisions, the potential unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give a statute its intended scope." Landgraf, 511 U.S. at 267.
¶ 134. At the same time," [t]he principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal human appeal" and "has long been a solid foundation of American law." Kaiser Aluminum & Chemical Corp. v. Bonjorno, 494 U.S. 827, 855 (1990) (Scalia, J, concurring). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." Landgraf, 511 U.S. at 265. Thus,
[t]he presumption is very strong that a statute was not meant to act retrospectively, and it ought never to receive such a construction if it is susceptible of any other. It ought not to receive such a construction unless the words used are so clear, strong and imperative that no other meaning can be annexed to them or unless the intention of the legislature cannot be otherwise satisfied.
*551 U.S. Fid. & Guar. Co v. United States, 209 U.S. 306, 314 (1908) (citations omitted). In sum, this "presumption against retroactivity" is a "guide to interpretation, not a constitutional imperative, because the presumption applies even when the Constitution does not forbid retroactivity." Antonin Scalia & Bryan A. Garner, supra at 261.
f 135. Given the foregoing, analysis in cases involving potentially-retroactive legislation follows a three-step process: (1) the court determines whether the legislature has "expressly prescribed the statute's proper reach," because if it has done so, "there is no need to resort to judicial default rules" and the statute is applied as written;[8] (2) if it is unclear whether the statute is meant to apply retroactively, the court "must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed"; and (3) if the court concludes the statute would indeed have a retroactive effect, the presumption against retroactivity is applied and the statute is not applied retroactively. Landgraf, 511 U.S. at 280; see also Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006).
¶ 136. Much litigation revolves around part two of this three-part test: resolving the question of whether a particular enactment applies retroactively. See e.g., Vartelas v. Holder, 566 U.S._, 132 S. Ct. 1479, 1483-84 (2012). It is in the resolution of these *552 types of questions that certain other legal issues become relevant, such as whether a statute is procedural or substantive and whether application of the statute would upset "vested rights." See, e.g., Landgraf, 511 U.S. at 273-75.[9] It is worth dwelling on this latter point for a moment.
¶ 137. The Supreme Court has at least implicitly characterized a "vested right" as "an immediate fixed right of present or future enjoyment." Fernandez-Vargas, 548 U.S. at 44 n.10 (quoting Pearsall v. Great N. Ry. Co., 161 U.S. 646, 673 (1896)).
[R]ights are vested, in contradistinction to being expectant or contingent. They are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest. They are expectant when they de *553 pend upon the continued existence of the present condition of things until the happening of some future event. They are contingent when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting.
Pearsall, 161 U.S. at 673 (internal quotation marks omitted) (citation omitted).
¶ 138. The concept of vested rights is at issue in this case because "every statute, which takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective." Landgraf, 511 U.S. at 269 (quoting Society for Propagation of the Gospel v. Wheeler, 22 F. Cas. 756, 767 (C.C.N.H. 1814) (No. 13,156) (Story, Circuit Justice) (emphases added)).
¶ 139. Thus, in cases involving retroactive legislation, courts may examine whether a party has a "vested right" that would be impaired by application of a statute in order to "determine whether application of the statute]] in question to the party challenging the statute actually has a retroactive effect." Society Ins. v. LIRC, 2010 WI 68, ¶ 29, 326 Wis. 2d 444, 786 N.W.2d 385; see also Barbara B. v. Dorian H., 2005 WI 6, ¶ 20, 277 Wis. 2d 378, 690 N.W.2d 849; Matthies v. Positive Safety Mfg. Co., 2001 WI 82, ¶¶ 19, 23, 244 Wis. 2d 720, 628 N.W.2d 842.[10] If a statute has retroactive *554 effect, the presumption against retroactivity becomes relevant. Landgraf, 511 U.S. at 280.
¶ 140. But, again, when the legislature unambiguously establishes that a law applies to conduct which has already occurred, the presumption against retroactivity is no longer relevant; courts must simply apply the words of the legislature — even if the statute has retroactive effect — unless they violate some constitutional stricture. See id. at 267, 273 ("[W]e have recognized that, in many situations, a court should 'apply the law in effect at the time it renders its decision,' even though that law was enacted after the events that gave rise to the suit. There is, of course, no conflict between that principle and a presumption against retroactivity when the statute in question is unambiguous" (citation omitted) (emphasis removed).); U. S. Fidelity, 209 U.S. at 314.
¶ 141. This takes us to the final general consideration in cases involving retroactive legislation: what the Constitution has to say about legislation that is clearly retroactive in effect. The Supreme Court of the United States addressed this precise topic earlier this year:
*555 [T]he restrictions that the Constitution places on retroactive legislation "are of limited scope":
The Ex Post Facto Clause flatly prohibits retroactive application of penal legislation. Article I, § 10, cl. 1, prohibits States from passing. .. laws "impairing the Obligation of Contracts." The Fifth Amendment's Takings Clause prevents the Legislature (and other government actors) from depriving private persons of vested property rights except for a "public use" and upon payment of "just compensation." The prohibitions on "Bills of Attainder" in Art. I, §§ 9-10, prohibit legislatures from singling out disfavored persons and meting out summary punishment for past conduct. The Due Process Clause also protects the interests in fair notice and repose that may be compromised by retroactive legislation; a justification sufficient to validate a statute's prospective application under the Clause "may not suffice" to warrant its retroactive application.
"Absent a violation of one of those specific provisions," when a new law makes clear that it is retroactive, the arguable "unfairness of retroactive civil legislation is not a sufficient reason for a court to fail to give [that law] its intended scope."
Bank Markazi v. Peterson, 578 U.S. _, 136 S. Ct. 1310, 1324-25 (2016) (quoting Landgraf, 511 U.S. at 266-68).
¶ 142. The current case features due process and equal protection challenges to the putatively retroactive application of Wis. Stat. § 807.01(4) (2013-14). Because of certain misapprehensions in the proceedings before this court and in the proceedings that occurred in a similar case involving the same basic *556 issues, namely Johnson, I will next discuss the applicable framework for analysis of these claims.
III. DUE PROCESS CHALLENGES TO RETROACTIVE LEGISLATION
¶ 143. The Fourteenth Amendment to the federal constitution provides in part that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const, amend. XTV, § 1.
¶ 144. The Due Process Clause "imposes procedural limitations on a State's power to take away protected entitlements." District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52, 67 (2009) (emphasis added) (citation omitted). Thus, for instance, the amendment requires "that deprivation of life, liberty or property by adjudication be preceded by notice and opportunity for hearing appropriate to the nature of the case." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950).
¶ 145. The Due Process Clause has also been interpreted to possess a "substantive component. . . that protects individual liberty against 'certain government actions regardless of the fairness of the procedures used to implement them.' " Collins v. Harker Heights, Tex., 503 U.S. 115, 125 (1992) (emphases added) (citation omitted).
¶ 146. Lands' End is not, apparently, arguing that the procedures by which the State has (putatively) deprived it of life, liberty or property — here, the enactment of a law by the legislative and executive branches of our state government — were constitutionally inadequate. Cf. Missouri v. Jenkins, 495 U.S. 33, 66 (1990) (Kennedy, J., concurring in part and concurring in the judgment) (" [C]itizens who are taxed [by a legislature] *557 are given notice and a hearing through their representatives, whose power is a direct manifestation of the citizens' consent."); Atkins v. Parker, 472 U.S. 115, 129-30 (1985) (" [A] welfare recipient is not deprived of due process when the legislature adjusts benefit levels ... . [T]he legislative determination provides all the process that is due" (citation omitted).).
¶ 147. Instead, Lands' End contends that the federal constitution prohibits the legislature from taking the type of action that it did regardless of any procedural protections; that is, Lands' End argues that application to it of the amendments to Wis. Stat. § 807.01(4) is unconstitutional no matter how the alleged deprivation is implemented. This is a substantive due process claim. See Barbara B., 277 Wis. 2d 378, ¶ 18 n.14 ("[Petitioner] is not arguing that the procedure applied in his case was unfair. Instead, he is arguing that it is unfair to apply [the statute] retroactively because he believes that it is wrong to apply those substantive rules to his case in light of the law that he alleges had previously been in place. Thus, it appears that [petitioner] is asserting a substantive due process claim, rather than a procedural due process claim" (citation omitted).); United States v. Carlton, 512 U.S. 26, 39-42 (1994) (Scalia, J., concurring) (framing retroactive tax legislation case as one involving substantive due process); Pension Ben. Guar. Corp. v. R. A. Gray & Co., 467 U.S. 717, 731-32 (1984) ("We have doubts . . . that retroactive application of the [statute] would be invalid under the Due Process Clause for lack of notice even if it was suddenly enacted by Congress without any period of deliberate consideration, as often occurs with floor amendments or 'riders' added at the last minute to pending legislation."); James L. Kainen, The Historical Framework *558 for Reviving Constitutional Protection for Property and Contract Rights, 79 Cornell L. Rev. 87, 112 (1993) ("Questions of retroactive law are essentially questions of substantive due process ..." (citation omitted).); cf. Reno v. Flores, 507 U.S. 292, 302 (1993) (substantive due process "forbids the government to infringe certain 'fundamental' liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest.").
¶ 148. The federal constitution's guarantee of "substantive" due process "provides heightened protection against government interference with certain fundamental rights and liberty interests." Washington v. Glucksberg, 521 U.S. 702, 719-20 (1997) (citation omitted). The United States Supreme Court has determined that these rights include, for example, the rights to have children and to direct the education and upbringing of one's children. Id. at 720. If a fundamental liberty interest is identified, any infringement on it by the government must be "narrowly tailored to serve a compelling state interest." Flores, 507 U.S. at 302. If fundamental rights and liberties are not at stake, however, the federal constitution requires only that a challenged law "be rationally related to legitimate government interests," Glucksberg, 521 U.S. at 728—that is, neither "arbitrary" nor "irrational." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976); see also Smith, 323 Wis. 2d 377, ¶ 12; Flores, 507 U.S. at 305.
f 149. For example, the Supreme Court has determined that, unlike statutes pertaining to fundamental rights, "legislative Acts adjusting the burdens and benefits of economic life" are subject only to the *559 "arbitrary and irrational" standard of review. Pension Ben. Guar. Corp., 467 U.S. at 729; Usery, 428 U.S. at 15.
f 150. Lands' End does not argue that a fundamental right or liberty is at stake. Instead, it claims that Wis. Stat. § 807.01(4) (2013-14) unconstitutionally impairs its "vested" right in the 12 percent interest rate provided under Wis. Stat. § 807.01(4) (2009-10). The idea behind Lands' End's argument is that, as it relied on the 12 percent interest rate in effect when it made its offer of settlement to the City of Dodgeville, the legislature may not apply a lower interest rate in Lands' End's case now that Lands' End has obtained a judgment in its favor above the amount of its earlier settlement offer. To do so, the argument presumably runs, would be to "deprive [Lands' End] of. . . property, without due process of law." U.S. Const, amend. XIV, § 1; see also Pearsall, 161 U.S. at 673 (" [Rights] are vested when the right to enjoyment, present or prospective, has become the property of some particular person or persons, as a present interest" (citation omitted).); Society Ins., 326 Wis. 2d 444, ¶ 30 (referring to "vested property right[s]" in case involving due process challenge to retroactive legislation).
f 151. As stated, there is no contention that the present case involves fundamental rights or interests. Thus, we would expect that even if Lands' End could be said to possess a vested property right in a 12 percent interest rate on the judgment it recovered, explicit abrogation of that right by the legislature would be subject to rational basis review. And in fact, this is exactly what relevant case law provides. The Supreme Court has stated:
*560 Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislative and executive branches:
[O]ur cases are clear that legislation readjusting rights and burdens is not unlawful solely because it upsets otherwise settled expectations. This is true even though the effect of the legislation is to impose a new duty or liability based on past acts.
To be sure, we [have] recognize [d] that retroactive legislation does have to meet a burden not faced by legislation that has only future effects. "It does not follow ... that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." But that burden is met simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.
Pension Ben. Guar. Corp., 467 U.S. at 729-30 (citations omitted).
¶ 152. Similarly, in Society Insurance we emphasized that, unlike in cases involving challenges based on the contract clauses of the federal and state constitutions, "we review a due process challenge to retroactive legislation under a rational basis review." Society Ins., 326 Wis. 2d 444, ¶ 30 n.12 (citation omitted). We made clear: "[Requiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge improperly subjects the retroactive legislation to a heightened level of scrutiny. Retroac *561 tive legislation must be 'justified by a rational legislative purpose.' " Id. (citing Pension Ben. Guar. Corp., 467 U.S. at 730).[11]
¶ 153. Unfortunately, despite the fact that rational basis review generally requires only that the law under review be "rationally related to a legitimate legislative purpose," Carlton, 512 U.S. at 35—a test that can be employed with minimum worry about judicial subjectivity — a less defensible and extremely subjective "balancing test" has wormed its way into our case law. In Matthies, for instance, we stated, "Whether there exists a rational basis [in retroactive legislation cases] involves weighing the public interest served by retroactively applying the statute against the private interest that retroactive application of the statute would affect." Matthies, 244 Wis. 2d 720, ¶ 27.
¶ 154. The validity of this balancing test is questionable, as becomes apparent when one traces the test's genesis. The test seemingly appeared in Wisconsin law in our decision in Martin v. Richards, 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995).
¶ 155. The Martin court, in turn, lifted the balancing test from a First Circuit case, Adams Nursing Home of Williamstown, Inc. v. Mathews, 548 F.2d 1077 (1st Cir. 1977). Martin, 192 Wis. 2d at 201. Adams Nursing Home was decided prior to relevant Supreme Court case law on the topic, such as Pension Benefit, see supra, ¶ 151, and cited, for its own principle authority, a then-17-year-old law review article. See Adams Nursing Home, 548 F.2d at 1080 (citations omitted). The author of the article states:
*562 [W]hen one considers the great variety of [the Supreme Court's retroactive legislation] cases, it becomes clear that no one factor is sufficient to explain the results which the Court has reached. Rather it is submitted that the constitutionality of such a statute is determined by three major factors, each of which must be weighed in any particular case.
Charles B. Hochman, The Supreme Court and the Constitutionality of Retroactive Legislation, 73 Harv. L. Rev. 692, 696-97 (1960).[12]
*563 ¶ 156. That the balancing test used by this court in retroactive legislation cases has a questionable pedigree might not be so problematic were it not for the fact that it is illogical to suggest that a legislative goal is simply irrational whenever "the private interest that retroactive application of [a] statute would affect" is adjudged to be "weigh[tier]" — even if by only a hair — than "the public interest served by retroactively applying the statute." Matthies, 244 Wis. 2d 720, ¶ 27. Such a judgment itself recognizes that there is some (rational) "public interest" served by retroactively applying the statute. In cases where the public and private interests are both "weighty," it would be incredibly difficult to apply the test objectively.
¶ 157. Simply stated, the proper test to be applied is the rational basis test. To the extent that the court has previously engaged in the balancing test to determine whether a rational basis exists for retroactive application of a statute, we should recognize that *564 it is really not a balancing test at all. At most, a statute might be found not to be rationally based or to be "irrational" pursuant to the court's due process "balancing test" only if there were virtually no conceivable public interest served by retroactive application of the legislation under review. The rational basis test is not whether, on balance, a private interest outweighs the public interest. The rational basis test is not simply picking whether the interests of one group are more important than the other. Those are legislative determinations that are not subject to this court's balancing. See, e.g., Smith, 323 Wis. 2d 377, ¶ 17 (citing Supreme Court's characterization of rational basis review as "a paradigm of judicial restraint" in FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 314 (1993)); Flynn v. DOA, 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998) ("This court has long held that it is the province of the legislature, not the courts, to determine public policy."). That is the only way to reconcile (1) our due process requirement that retroactive legislation need only be justified by a rational legislative purpose; with (2) our due process requirement that the public interest served by retroactive application of a statute outweigh the private interest affected by retroactive application of a statute. See Society Ins., 326 Wis. 2d 444, ¶¶ 30, 53. There may be an implicit recognition of the relevant analysis not being a balancing test but instead being a straightforward application of the rational basis test in certain of our cases. See, e.g. Martin, 192 Wis. 2d at 211 (" [T]he record reveals minimal, if any, public interest served by applying the cap on noneconomic damages retroactively" (emphasis added).); Matthies, 244 Wis. 2d 756, ¶ 47 ("[T]he substantial impairment of Matthies' right to recovery significantly outweighs *565 the public interest, if any, served by retroactive application of [Wis. Stat.] § 895.045(1)" (emphasis added).).
¶ 158. There also seems to be implicit recognition of this fact in Supreme Court case law. In Pension Benefit, the Supreme Court acknowledged a four-part test applied by the Seventh Circuit "for reviewing the constitutionality of retroactive legislation under the Fifth Amendment's Due Process Clause." Pension Ben. Guar. Corp., 467 U.S. at 727 & n.6. One part of that test required consideration of "the equities of imposing the legislative burdens." Id. at 727. The Court stated, "We . . . reject the constitutional underpinnings of the analysis employed by the Court of Appeals ... , although we have no occasion to consider whether the factors mentioned by that court might in some circumstances be relevant in determining whether retroactive legislation is rational." Id. at 727 n.6 (emphases added). The Supreme Court thus clarified that the paramount constitutional question in cases involving retroactive legislation is the statute's rationality. See also Pension Ben. Guar. Corp., 467 U.S. at 733 (" [Although we have noted that retrospective civil legislation may offend due process if it is 'particularly "harsh and oppressive," ' that standard does not differ from the prohibition against arbitrary and irrational legislation that we clearly enunciated in [Usery]" (citations omitted).).
¶ 159. It is not as though the Supreme Court has always categorically ignored consideration of the relative equities in conducting due process analyses of retroactive legislation. See, e.g., Usery, 428 U.S. at 18 (discussing plaintiffs' arguments that retroactive liability would be unfair). Ultimately, however, any application of a non-constitutional balancing test *566 must at most be in service of determination of the question of a statute's rationality. See id. at 19 (rejecting unfairness arguments and stating, "It is enough to say that the Act approaches the problem of cost spreading rationally; whether a broader cost-spreading scheme would have been wiser or more practical under the circumstances is not a question of constitutional dimension" (citation omitted) (emphasis added).).
f 160. Thus, while I would not necessarily foreclose consideration of the relative equities, a mere balancing of the relative equities is not the test. "Statutes may be invalidated on due process grounds only under the most egregious of circumstances." E. Enters. v. Apfel, 524 U.S. 498, 550 (1998) (Kennedy, J., concurring in the judgment and dissenting in part). Consequently, to the extent that there is any balancing employed in the context of retroactive legislation, the question asked under the rational basis test must be whether "the private interest that retroactive application of the statute would affect" is so much "weightier]" than "the public interest served by retroactively applying the statute," Matthies, 244 Wis. 2d 720, ¶ 27, that the statute could only be characterized as "arbitrary or irrational." Smith, 323 Wis. 2d 377, ¶ 11. Quite obviously, this "arbitrary or irrational" determination is likely in only the rarest of cases, where essentially no genuine public interest can be said to exist. See also The American Heritage Dictionary of the English Language 94 (3d ed. 1992) (defining "arbitrary" in part as follows: "1. Determined by chance, whim, or impulse, and not by necessity, reason, or principle ... 2. Based on or subject to individual judgment or preference.").
*567 ¶ 161. Rationality may seem a low bar. And, indeed, the Supreme Court has repeatedly determined that it is, in upholding retroactive legislation against due process challenges. See, e.g., Pension Ben. Guar. Corp., 467 U.S. at 725 (retroactive application of statute requiring employers withdrawing from a multiem-ployer pension plan to "pay a fixed and certain debt to the pension plan," such that certain employer withdrawing from the plan prior to enactment of the statute was liable in amount of $201,359, held constitutional); Usery, 428 U.S. at 5-6, 14, 19-20 (retroactive application of statute requiring coal mine operators to compensate miners disabled by black lung disease, such that certain operators were obligated to compensate miners who had already left employment prior to enactment of the statute, held constitutional); Cf. Carlton, 512 U.S. at 28-29, 35 (retroactive application of statute treating earlier, newly-established estate tax deduction as available only to certain estates, such that estate which spent $631,000 in order to use deduction to reduce estate tax by $2,501,161 before enactment of the statute could not use deduction, held constitutional).
¶ 162. On the other hand, there is nothing particularly surprising about the fact that precedent requires that the constitutional guarantee of "substantive due process" provides only modest protection in cases not involving fundamental rights. See, e.g., Flores, 507 U.S. at 302-03. Additionally, and importantly, to say that the due process clause does not prohibit application of retroactive legislation does not mean that such legislation automatically survives attack based on other constitutional provisions. See, e.g., E. Enters., 524 U.S. at 522, 532-37 (plurality) (retro *568 active statute effected an unconstitutional taking in violation of Fifth Amendment Takings Clause).
IV. EQUAL PROTECTION CHALLENGES TO RETROACTIVE LEGISLATION
¶ 163. As discussed, a due process challenge to retroactive legislation is somewhat different than a due process challenge to prospective legislation. "It does not follow. . . that what Congress can legislate prospectively it can legislate retrospectively. The retroactive aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." Pension Ben. Guar. Corp., 467 U.S. at 730 (citation omitted). In contrast, an equal protection challenge to retroactive legislation cases seemingly would be remarkably similar, if not identical to such challenges in cases involving only prospective legislation: in both types of cases, courts must examine the legislature's classifications under the appropriate standard of review. See, e.g., Smith, 323 Wis. 2d 377, ¶¶ 12-13, 15-17. Thus, in summarizing the various restrictions that the Constitution places on retroactive legislation in Bank Markazi, see supra ¶ 141, the Supreme Court makes no mention of the Equal Protection Clause of the Fourteenth Amendment. See Bank Markazi, 136 S. Ct. at 1324-25 (citation omitted). This is likely not because the Equal Protection Clause provides no protection in this area of law, but because it provides no special protection in this area of the law. In both types of cases — those involving prospective application of a law and those involving retroactive application of a law — courts must determine whether the legislature has complied with the "general rule that States must treat like cases alike but *569 may treat unlike cases accordingly." Vacco v. Quill, 521 U.S. 793, 799 (1997) (citation omitted).[13]
¶ 164. Lands' End argues that application to it of Wis. Stat. § 807.01(4) (2013-14) denies it the equal protection of the laws because it "treat[s] differently, without rational basis, the class of plaintiffs who commenced actions, made offers of settlement, and obtained a final judgment prior to the passage of Act 69 from those obtaining [judgment] after the passage of Act 69."
¶ 165. Because Lands' End does not argue that a fundamental right or suspect class is at issue, rational basis review is the level of judicial scrutiny applicable to Lands' End's equal protection challenge to Wis. Stat. § 807.01(4) (2013-14). See United States v. Sperry Corp., 493 U.S. 52, 65 (1989); State v. Alger, 2015 WI 3, ¶ 39, 360 Wis. 2d 193, 858 N.W.2d 346. Legislation is upheld under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Alger, 360 Wis. 2d 193, ¶ 39 (citation omitted).
¶ 166. With the relevant principles and analytical frameworks in place, I proceed to analyze Lands' End's claims. I note that my remaining analysis largely tracks the analysis presented in the lead opinion.
V. WHETHER WIS. STAT. § 807.01(4) (2013-14) APPLIES RETROACTIVELY
¶ 167. Wisconsin Stat. §807.01(4) (2013-14) states:
*570 If there is an offer of settlement by a party under this section which is not accepted and the party recovers a judgment which is greater than or equal to the amount specified in the offer of settlement, the party is entitled to interest at an annual rate equal to 1 percent plus the prime rate in effect on January 1 of the year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year, as reported by the federal reserve board in federal reserve statistical release H. 15, on the amount recovered from the date of the offer of settlement until the amount is paid. Interest under this section is in lieu of interest computed under ss. 814.04 (4) and 815.05 (8).
Wis. Stat. § 807.01(4) (2013-14).
¶ 168. Consistent with the above discussion, the first step in analyzing Lands' End's claims against Wis. Stat. § 807.01(4) (2013-14) is to determine whether the legislature has "expressly prescribed the statute's proper reach," because if it has done so, the statute is applied as written and the presumption against retroactivity is ignored. Landgraf, 511 U.S. at 280. As the lead opinion explains, it is simply not clear whether Wis. Stat. § 807.01(4) (2013-14) applies to conduct preceding the statute's enactment. Lead op., ¶ 46.
¶ 169. 2011 Wis. Act 69 does contain an "Initial Applicability" section, see 2011 Wis. Act 69, § 4, but it is unhelpful here. The section states, "This act first applies to an execution on a judgment entered on the effective date of this subsection." Id. A federal court has interpreted this language "to mean that the applicable interest rate is determined by the date judgment is entered." James Michael Leasing Co. v. *571 Paccar, Inc., No. 11-C-0747, 2013 WL 5771156, at *2 (E.D. Wis. Oct. 24, 2013), aff'd, 772 F.3d 815 (7th Cir. 2014). However, while the legislature could have written, "This act first applies to a judgment entered on the effective date of this statute," it did not do so. Lands' End contends, and the City does not dispute this fact, that it will never obtain execution on a judgment in this case. See, e.g., Wis. Stat. § 815.02 (2013-14) ("Ajudgment which requires the payment of money or the delivery of property may be enforced in those respects by execution."). The effect of the initial applicability section of 2011 Wis. Act 69 on this case is, at best, unclear.
f 170. Further, Wis. Stat. § 807.01(4) (2013-14) itself contains no indication regarding the "temporal reach" of the statute. Fernandez-Vargas, 548 U.S. at 37; see Wis. Stat. § 807.01(4) (2013-14).
¶ 171. Thus, Wis. Stat. §807.01(4) (2013-14) must be assessed in order to ascertain whether it has retroactive effect; if it does, the presumption against retroactivity is applied because the statute does not otherwise indicate its temporal reach. Landgraf, 511 U.S. at 270. I agree with the lead opinion that Wis. Stat. § 807.01(4) (2013-14) does not have retroactive effect. See lead op., ¶ 82.
f 172. Lands' End argues that application of Wis. Stat. § 807.01(4) (2013-14) to it would disturb its vested right. But both the original and the amended versions of Wis. Stat. § 807.01(4) require both an unaccepted offer of settlement and recovery of a judgment greater than or equal to the amount specified in the offer of settlement in order for a particular interest rate to be applied. Lands' End only fulfilled one of these requirements before the statute was amended.
*572 f 173. At the time that Lands' End made an offer of settlement to the City, it had no "vested" right to anything — it had no "immediate fixed right of present or future enjoyment." See Fernandez-Vargas, 548 U.S. at 44 n.10. It could not have enforced a claim to 12 percent interest; any court would have required recovery of a judgment greater than or equal to the amount contained in the offer of settlement. Lands' End instead possessed a contingent right. Rights are contingent, as opposed to vested, "when they are only to come into existence on an event or condition which may not happen or be performed until some other event may prevent their vesting." Pearsall, 161 U.S. at 673 (citation omitted). When Lands' End made an offer of settlement to the City, it was possible that Lands' End might go on to recover a judgment. Alternately, it was possible that "some other event [could] prevent [the] vesting" of its contingent right to 12 percent interest — for instance, Lands' End might have lost the case, or the City might have accepted its settlement offer, or Lands' End might have won the case but recovered a judgment less than the amount contained in its earlier offer of settlement. The fact that the legislature changed the applicable interest rate prior to the vesting of Lands' End's contingent right might seem unfair, but it is not a retroactive application of a new law. " [A] statute 'is not made retroactive merely because it draws upon antecedent facts for its operation.' " Landgraf, 511 U.S. at 269 n.24.
f 174. The argument that Lands' End's right to a 12 percent interest rate is vested because that rate was in effect when it calculated an appropriate offer of settlement ignores the fact that Lands' End could have factored into its calculation the possibility that *573 the interest rate might change. Cf. Carlton, 512 U.S. at 34 (stating, in regard to due process challenge to retroactive tax legislation, "we do not consider respondent Carlton's lack of notice regarding the 1987 amendment to be dispositive. ... [A] taxpayer 'should be regarded as taking his chances of any increase in the tax burden which might result from carrying out the established policy of taxation' " (citation omitted).). Besides, "[a] statute does not operate 'retrospectively' merely because it. . . upsets expectations based in prior law." Landgraf, 511 U.S. at 269. For instance,
[e]ven uncontroversially prospective statutes may unsettle expectations and impose burdens on past conduct: a new property tax or zoning regulation may upset the reasonable expectations that prompted those affected to acquire property; a new law banning gambling harms the person who had begun to construct a casino before the law's enactment or spent his life learning to count cards.
Id. at 269 n.24.
¶ 175. More generally — and apart from the vested rights question — determining whether a statute has retroactive effect requires a "commonsense, functional judgment" regarding 'whether the new provision attaches new legal consequences to events completed before its enactment.'" Hadix, 527 U.S. at 357-58 (citation omitted). Wisconsin Stat. § 807.01(4) (2013-14) did not change the legal consequences of any events completed prior to that statute's enactment. At most, Lands' End can point to its offer of settlement, but an offer of settlement alone produces no "legal consequences" (at least, none relevant to the questions before us). And while Lands' End may have possessed "expectations" regarding 12 percent interest, they *574 were not "settled" for the reasons already discussed— Lands' End had not completed all that Wis. Stat. § 807.01(4) (2009-10) required. See Landgraf, 511 U.S. at 270.[14]
*575 ¶ 176. Because Wis. Stat. § 807.01(4) (2013-14) does not apply retroactively in this case, there is no need to presume that it applies prospectively — it does apply prospectively.[15] Lands' End never recovered a judgment prior to the enactment of Wis. Stat. § 807.01(4) (2013-14) and was thus never entitled to 12 percent interest on such a judgment.
VI. WHETHER APPLICATION OF WIS. STAT. §807.01(4) (2013-14) VIOLATES LANDS' END'S RIGHT TO DUE PROCESS OF LAW
¶ 177. As stated, Wis. Stat. § 807.01(4) (2013-14) does not apply retroactively and does not impair a vested right possessed by Lands' End. Lands' End rested its due process claim on the presence of an impaired vested right. Indeed, it does not explain how, in the absence of a vested right, it is being " deprive [d] of life, liberty, or property, without due process of law." U.S. Const, amend. XIV, § 1. Thus, I need not assess its due process claim further. See lead op., ¶ 82.[16]
*576 VII. WHETHER APPLICATION OF WIS. STAT. §807.01(4) (2013-14) DENIES LANDS' END THE EQUAL PROTECTION OF THE LAWS
f 178. Lands' End does not argue that a fundamental right or suspect class is at issue, so rational basis applies to Lands' End's equal protection challenge to Wis. Stat. § 807.01(4) (2013-14). See Sperry Corp., 493 U.S. at 65; Alger, 360 Wis. 2d 193, ¶ 39. Legislation is upheld under rational basis review "unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." Alger, 360 Wis. 2d 193, ¶ 39.
¶ 179. The classification identified by Lands' End is rational. The legislature needed to determine a cut-off point for application of the old 12 percent interest rate. " [The legislature] could have rationally concluded that only those who are successful [in their litigation] realize a benefit therefrom sufficient to justify" prevention of application of the new interest rate. Cf. Sperry Corp., 493 U.S. at 54, 65 (statute requiring "Federal Reserve Bank of New York to deduct and pay into the United States Treasury a percentage of any award made by the Iran-United States Claims Tribunal in favor of an American claimant before remitting the award to the claimant" did not violate equal protection by assessing a fee only against claimants who actually received an award, and not against all claimants). In other words, the legislature may have thought, reasonably, that those who had already obtained a judgment prior to passage of 2011 Wis. Act 69 had a greater claim to the 12 percent interest rate than did those who had simply made an *577 offer but not obtained a judgment. Application of the new interest rate to the former group might have been viewed as significantly more inequitable than application of the new interest rate to the latter group, since the latter group was still fully engaged in litigation with no guarantee of success.
¶ 180. Moreover,
[t]he problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. The legislature may select one phase of one field and apply a remedy there, neglecting the others.
Williamson v. Lee Optical of Okla., 348 U.S. 483, 489 (1955) (citations omitted). Perhaps the legislature, viewing 12 percent interest as a windfall and thus an "evil," wished to restrict its continued application, if at all, to only a small class of pending cases, and thought that application of 12 percent interest to all cases in which there had been offers of settlement, as opposed to cases in which there had been both offers of settlement and adequately-sized judgment awards, would have unduly expanded that class.
¶ 181. It was not irrational — and thus not unconstitutional — for the legislature to draw its legislative line at parties who had actually obtained judgments greater than or equal to the amount specified in their earlier, rejected offers of settlement, instead of at parties who had simply made offers of settlement.[17]
*578 VDI. WHETHER APPLICATION OF WIS. STAT. § 807.01(4) (2013-14) VIOLATES WIS. STAT. § 990.04 (2013-14)
f 182. Finally, Lands' End argues that application to it of the amendments to Wis. Stat. § 807.01(4) violates Wis. Stat. § 990.04 (2013-14). The portion of the statute cited by Lands' End provides:
The repeal of a statute hereafter shall not remit, defeat or impair any civil or criminal liability for offenses committed, penalties or forfeitures incurred or rights of action accrued under such statute before the repeal thereof, whether or not in course of prosecution or action at the time of such repeal; but all such offenses, penalties, forfeitures and rights of action created by or founded on such statute, liability wherefore shall have been incurred before the time of such repeal thereof, shall be preserved and remain in force notwithstanding such repeal, unless specially and expressly remitted, abrogated or done away with by the repealing statute.
Wis. Stat. § 990.04 (2013-14).
f 183. Lands' End does not make clear to which of the categories specified in Wis. Stat. § 990.04 *579 (2013-14) it believes the operation of Wis. Stat. § 807.01(4) (2009-10) belongs. As discussed above, however, Lands' End never fulfilled the requirements of § 807.01(4) (2009-10) before it was amended. Thus no liability, penalties, or forfeitures were incurred and no rights of action accrued before § 807.01(4) (2009-10) was repealed. At least with regard to the brief and undeveloped arguments made by Lands' End on this point, § 990.04 (2013-14) presents no impediment in this case.[18]
IX. CONCLUSION
¶ 184. The legislature has broad authority to enact laws, including laws that apply retroactively. These laws are entitled to a presumption of constitutionality; the legislature, like this court, interprets the constitution and attempts to follow it. In passing 2011 Wis. Act 69 and amending Wis. Stat. § 807.01(4) (2009-10), the legislature reduced an interest rate applicable to certain types of judgments. Lands' End recovered one of these judgments, but only after the relevant legislation had been enacted. Wisconsin Stat. *580 § 807.01(4) (2013-14) does not have retroactive effect on Lands' End, even though it applies in the current case. Nor does Lands' End possess a vested right in the earlier interest rate.
¶ 185. No fundamental rights or suspect classes are involved in this case and the amendments made to Wis. Stat. § 807.01(4) pass the minimal test of rationality required by the constitutional guarantee of equal protection of the laws. Finally, Wis. Stat. § 990.04 (2013-14) does not bar application of Wis. Stat. § 807.01(4) (2013-14) to Lands' End. Consequently, the decision of the circuit court should be affirmed.
¶ 186. For the foregoing reasons, I respectfully concur.

 I also concur in the lead opinion's decision to overrule Johnson v. Cintas Corp. No. 2, 2015 WI App 14, 360 Wis. 2d 350, 860 N.W.2d 515. See infra ¶¶ 176 n.15, 177 n.16; lead op., ¶¶ 7, 114.

 Traditionally, a balancing test is a totality-of-the circumstances-type test. See, e.g., State v. Malone, 2004 WI 108, ¶ 21, 274 Wis. 2d 540, 683 N.W.2d 1 ("Law enforcement *542 action is to be judged against the standard of reasonableness, which in turn 'depends "on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers." ' In crafting this balance, this court must carefully scrutinize the totality of the circumstances" (citations omitted).). In contrast, in applying a rational basis test, a court does not, for instance, balance society's expectations; the court simply determines whether the legislature had a rational basis for doing what it did.

 We took this case in large part to address the Johnson court's assessment of a due process challenge to the amendments to Wis. Stat. § 807.01(4). The Johnson court applied our due process balancing test and concluded that application of Wis. Stat. § 807.01(4) (2013-14) in that case was unconstitutional. Johnson, 360 Wis. 2d 350, ¶¶ 27-29. Lands' End, Inc. devotes much of its briefing to its own due process challenge to the amendments to Wis. Stat. § 807.01(4), relying extensively on Johnson.

 The statute provides that the applicable prime rate in a given case is the "the prime rate in effect on January 1 of the *543 year in which the judgment is entered if the judgment is entered on or before June 30 of that year or in effect on July 1 of the year in which the judgment is entered if the judgment is entered after June 30 of that year." Wis. Stat. § 807.01(4) (2013-14).

 Lands' End actually does not appear to specify whether it is bringing a due process claim under the federal constitution, the state constitution, or both. As will be explained, this does not affect the outcome of my analysis. See infra n.6.

 Lands' End also brings a claim under the equal protection provision of the Wisconsin Constitution. See Wis. Const, art. 1, § 1; Aicher v. Wis. Patients Compensation Fund, 2000 WI 98, ¶ 55 & n.14, 237 Wis. 2d 99, 613 N.W.2d 849. As noted, supra n.5, the nature of Lands' End's due process claim is not clear. However, "[t]his court has held the due process and equal protection clauses of the Wisconsin Constitution are the substantial equivalents of their respective clauses in the federal constitution," and Lands' End does not argue that we should interpret the federal and state constitutions differently in this case. State v. Smith, 2010 WI 16, ¶ 12, 323 Wis. 2d 377, 780 N.W.2d 90. For simplicity, I will therefore refer only to the federal constitution in this writing, as this will equally dispose of any state constitutional claims.

 Although the words "retroactive" and "retrospective" technically possess distinct meanings, see, e.g., 16B Am. Jur. 2d Constitutional Law § 735, the terms "are synonymous in judicial usage and may be employed interchangeably." 2 Sutherland Statutory Construction § 41:1 (7th ed.). See also Landgraf v. USI Film Products, 511 U.S. 244, 269 n.23 (1994).

 " [I]n the absence of language as helpful as [an express prescription,] [the court] trfies] to draw a comparably firm conclusion about the temporal reach specifically intended by applying '[its] normal rules of construction.'" Fernandez-Vargas v. Gonzales, 548 U.S. 30, 37 (2006) (citation omitted).

 The Supreme Court has stated that " [e]ven absent specific legislative authorization, application of new statutes passed after the events in suit is unquestionably proper in many situations." Landgraf, 511 U.S. at 273. First, "[w]hen the intervening statute authorizes or affects the propriety of prospective relief, application of the new provision is not retroactive." Id. Second, the Supreme Court has
regularly applied intervening statutes conferring or ousting jurisdiction, whether or not jurisdiction lay when the underlying conduct occurred or when the suit was filed.. .. Present law normally governs in such situations because jurisdictional statutes "speak to the power of the court rather than to the rights or obligations of the parties."
Id. at 274 (citation omitted). Third,
[c]hanges in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroac-tivity. . .. Because rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.
Id. at 275 (citation omitted).

 This application of the vested rights concept should not be confused with statements in some of our earlier cases that "[a] legislature may not constitutionally enact a law which impairs vested rights acquired under prior law, nor may it 'enact retrospective laws creating new obligations with respect to past transactions.'" State ex rel. Briggs & Stratton Corp. v. *554 Noll, 100 Wis. 2d 650, 656, 302 N.W.2d 487 (1981) (citation omitted), overruled by Neiman v. Am. Nat. Prop. & Cas. Co., 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160. We have since changed course, explaining that" [t]o the extent the language in prior holdings implies that identifying a 'vested' right is dispositive in determining whether a clearly retroactive statute is constitutional, that language is overruled." Neiman, 236 Wis. 2d 411, ¶ 14.
I note that many prior cases of the Supreme Court in the field of retroactive legislation were determined "during an era characterized by exacting review of economic legislation under an approach that 'has long since been discarded.'" United States v. Carlton, 512 U.S. 26, 34 (1994) (citation omitted).

 As will be discussed below, the Johnson court erroneously stated that the "significant and legitimate" standard was applicable to a due process challenge to retroactive legislation. Johnson, 360 Wis. 2d 350, ¶ 15.

 The Adams Nursing Home court also cited, as indirect authority for its balancing test, Usery v. Turner Elkhorn Mining Co., 428 U.S. 1 (1976), and S. Terminal Corp. v. E.P.A., 504 F.2d 646, 680 (1st Cir. 1974). Adams Nursing Home of Williamstown, Inc. v. Mathews, 548 F.2d 1077, 1080-81 (1st Cir. 1977) (citations omitted). Neither provides strong support for the balancing test currently employed in this court's vested rights jurisprudence. The discussion in South Terminal cited by the Adams Nursing Home court, for example, involves a Contracts Clause challenge. S. Terminal, 504 F.2d at 680. Usery does not explicitly discuss a balancing test and suggests that rationality is the important yardstick. See Usery, 428 U.S. at 15, 19 ("It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way."). In any event, Usery was published prior in time to Pension Benefit Guaranty Corp. v. R. A. Gray & Co., 467 U.S. 717 (1984).
The Martin court also provided by way of footnote certain "examples of decisions" using the balancing test, namely Usery, Chappy v. LIRC, 136 Wis. 2d 172, 192-94, 401 N.W.2d 568 (1987), and State ex rel. Briggs & Stratton v. Noll, 100 Wis. 2d 650, 656-58, 302 N.W.2d 487 (1981), overruled by Neiman v. American National Prop. & Cas. Co., 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160, but these latter two cases are no more convincing. Martin v. Richards, 192 Wis. 2d 156, 201 n.8, 531 N.W.2d 70 (1995) (citations omitted). Chappy applies *563 the rational basis test and does not discuss any balancing test. See Chappy, 136 Wis. 2d at 192. Noll in fact stated that any retrospective law that impairs vested rights acquired under prior law is unconstitutional, and was overruled in that respect by this court's decision in Neiman. Noll, 100 Wis. 2d at 656, overruled by Neiman, 236 Wis. 2d 411, ¶ 14.
Martin's decision to adopt use of a balancing test is perplexing; it even refers to both Usery and Pension Benefit in the paragraph immediately preceding its citation to Adams Nursing Home. As discussed, Pension Benefit (and Usery, for that matter) makes clear that retroactive application of a statute need only be "supported by a legitimate legislative purpose furthered by rational means" to survive due process challenge. Pension Ben. Guar. Corp., 467 U.S. at 729. Martin neglected to cite this portion of Pension Benefit. The word "rational" appears only once in Martin, in an unrelated context. Martin, 192 Wis. 2d at 173.

 At the very least, the parties have not suggested that the equal protection analysis conducted in the context of retroactive legislation is different than that conducted in the context of prospective legislation.

 Other than arguing that Wis. Stat. § 807.01(4) (2013-14) impairs a vested right, Lands' End does not develop arguments that may be read to explain why application of that statute to it is retroactive. I am hesitant to develop these arguments for Lands' End. I note that it is doubtful that the amendments to Wis. Stat. § 807.01(4) could be read to "attac[h] a new disability, in respect to transactions or considerations already past" under Justice Story's definition of retroactive laws. Vartelas v. Holder, 566 U.S. _, 132 S. Ct. 1479, 1486-87 (2012) (alteration in original) (citation omitted); see supra ¶ 22. Admittedly, this is a more complicated question than appears at first glance, especially without briefing. See, e.g., Vartelas, 132 S. Ct. at 1487 (seemingly suggesting that severity of the effect of a statutory change affects whether an outcome "ranks as a 'new disability.'"); id. at 1495 (Scalia, J., dissenting) ("[T]he 'new disability in respect to past events' test provides no meaningful guidance. I can imagine countless laws that... impose 'new disabilities' related to 'past events' and yet do not operate retroactively.").
As stated, prior to 2011 Wis. Act 69, only a litigant who had (among other things) recovered a judgment was entitled to a 12 percent interest rate. Thus, even if a reduced interest rate might be considered a "new disability," it "attaches" to post-enactment conduct: the recovery of a judgment following an earlier, rejected offer of settlement. See id. at 1489-90 & n.7 (law prohibiting persons who have been adjudicated as a mental defective or who have been committed to a mental institution from possessing guns does not operate retroactively, as the law addresses a danger arising post-enactment, namely "mentally unstable persons purchasing guns"). 2011 Wis. Act 69 did nof attach a disability to pre-enactment conduct, namely offers of settlement, because these offers did not entitle the offeror to any specific interest rate. It would be difficult to see why a contrary conclusion would not require a determination that 2011 Wis. Act 69 also attached a "new disability" to those who had merely filed lawsuits prior to the law's enactment, *575 which is as much of a prerequisite for fulfillment of Wis. Stat. § 807.01(4) (2013-14) as making an offer of settlement.

 The Johnson court concluded otherwise. See, e.g., Johnson, 360 Wis. 2d 350, ¶ 27. As explained, I concur in the lead opinion's decision to overrule Johnson.

 In conducting its due process analysis, the Johnson court erroneously stated that " [i]f retroactive legislation causes 'substantial impairment of a vested right,' it is unconstitutional unless justified by a significant and legitimate public interest." Johnson, 360 Wis. 2d 250, ¶ 15 (citation omitted). As discussed above, in Society Insurance v. Labor & Industry Review Comm'n, 2010 WI 68, 326 Wis. 2d 444, 786 N.W.2d 385, we explained:" [R]equiring a showing of a 'significant and legitimate public purpose' in the course of a due process challenge [to retroactive legislation] improperly subjects the retroactive legislation to a heightened level of scru *576 tiny. Retroactive legislation must be 'justified by a rational legislative purpose.'" Society Ins., 326 Wis. 2d 444, ¶ 30 n.12.

 I do not apply the complicated five-factor equal protection test cited by Lands' End. See, e.g., Metro. Assocs. v. City of *578 Milwaukee, 2011 WI 20, ¶ 64, 332 Wis. 2d 85, 796 N.W.2d 717. Though perhaps a useful tool in certain contexts, the overriding concern in equal protection cases not involving fundamental rights or suspect classes is whether the classification drawn by the legislature "has a rational basis," that is, whether "there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Armour v. Indianapolis, Ind., 566 U.S. _, 132 S. Ct. 2073, 2079-80 (2012) (citation omitted); see also, e.g., State v. Alger, 2015 WI 3, ¶ 39, 360 Wis. 2d 193, 858 N.W.2d 346. This test is well-established. See Armour, 132 S. Ct. at 2080. Such a rational basis is clearly present here, and proceeding through a five-factor test to confirm that fact is unnecessary.

 At common law, "the repeal of a penal statute eliminated prosecution for past acts. The so-called abatement doctrine provided that repeal, even repeal by amendment, and even by amendment reducing the penalty, would require dismissal of the indictment under the earlier criminal statute." Antonin Scalia & Bryan A. Garner, Reading Law 264 (2012). Scalia and Garner note that this doctrine "has been regarded (perhaps erroneously) as an exception" to the presumption against retroactivity. Id. However, " [t]he United States and almost all the states have adopted saving statutes designed to eliminate the doctrine and to permit continued prosecution under the prior law." Id. The federal version of these savings statutes, at least according to Scalia and Garner, is found at 1 U.S.C. § 109 (id. at 264-65), and is somewhat similar in phrasing to Wis. Stat. § 990.04 (2013-14).